**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 16-cv-00924-RM

PETR BORSKI,,

    Plaintiff,

v.

LORETTA E. LYNCH, *et al.,*

    Defendants.

_____

**OPINION AND ORDER**
_____

On June 27, 2016, plaintiff Petr Borski ("plaintiff") filed an Amended Petition for Writ of Mandamus ("the mandamus petition") against various U.S. government officials (collectively, "defendants"), seeking relief so as to, *inter alia*, compel the U.S. Citizenship and Immigration Services ("CIS") to explain why it had not made a determination on plaintiff's application for naturalization, compel CIS to render such a determination, and declare that plaintiff had a bone fide marriage. (ECF No. 14.) Plaintiff seeks relief under the Mandamus Act, 28 U.S.C. § 1361, the Administrative Procedures Act, 5 U.S.C. §§ 701, *et seq.* ("the APA"), and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* (*Id.*)

One day later, defendants filed a motion to dismiss the mandamus petition ("the motion to dismiss"), pursuant to Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)") and Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). (ECF No. 15.) Plaintiff has responded in opposition to the motion to dismiss (ECF No. 22), and defendant has filed a reply (ECF No. 23). Also pending before the Court is

plaintiff's motion for preliminary injunction (ECF No. 9), to which defendants have responded (ECF No. 16).

I.      **Legal Standards**

Motions to dismiss for lack of subject matter jurisdiction take two principal forms: (1) a facial attack, or (2) a factual attack on the allegations in the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Here, defendants present a factual attack on the mandamus petition (ECF No. 15 at 3), and thus, the Court need not presume the truthfulness of the mandamus petition's factual allegations and may consider affidavits and other documents, *see Holt*, 46 F.3d at 1002. That being said, as far as the Court can discern, defendants do not challenge the factual allegations of the mandamus petition itself, but, instead, wish to contribute additional facts related to a notice to appear issued to plaintiff. (*See* ECF No. 15 at 3.) Given that plaintiff does not dispute that the notice to appear was issued (*see* ECF No. 22 at 19), the Court observes no problem with adding the fact of the issuance of the notice to appear to the facts alleged in the mandamus petition.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). In the complaint, the plaintiff must allege a "plausible" entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556, 127 S.Ct. 1955 (2007). Conclusory allegations are insufficient. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). A complaint warrants dismissal if it fails "*in toto* to render [plaintiff's] entitlement to relief plausible." *Twombly*, 550 U.S. at 569 n.14.

**II.     Factual Background**

Plaintiff is a citizen and national of the Czech Republic. (ECF No. 14 at ¶ 16.) Plaintiff was inspected and admitted to the United States on a visitor visa on September 8, 2004. (*Id*. at ¶ 17.) On July 22, 2005, plaintiff married Michelle Edwards ("Michelle"). (*Id*. at ¶ 18.) Three years after their marriage, Michelle submitted an I-130 application, requesting defendants recognize the marital relationship between plaintiff and Michelle. (*Id*. at ¶ 19.) At the same time, plaintiff submitted an I-485 application to adjust his status to that of a lawful permanent resident. (*Id*. at ¶ 20.) On August 14, 2009, plaintiff and Michelle attended an interview with respect to the I-130 and I-485 applications. (*Id*. at ¶ 21.) Defendants found that plaintiff and Michelle had a bone fide marriage, and plaintiff met all other requirements to adjust his lawful permanent resident status. (*Id*. at ¶ 22.) Plaintiff's has been a lawful permanent resident since August 14, 2009. (*Id*. at ¶ 23.)

On July 21, 2014, plaintiff submitted an application for naturalization. (*Id*. at ¶ 25.) On March 23, 2015, plaintiff was ordered to appear for an examination at the Denver Field Office. (*Id*. at ¶ 27.) During the examination, plaintiff was given tests on English, U.S. history, and U.S. government, which he passed. (*Id*. at ¶ 30.) On the date of the examination, plaintiff was informed that a decision could not be made on his application at that time. (*Id*. at ¶ 31.) Around May 5, 2016, defendants contacted plaintiff's former spouse, Michelle, and inquired about her relationship with plaintiff. (*Id*. at ¶ 32.)[1]  Around June 1, 2016, defendants again contacted Michelle and inquired about her relationship with plaintiff. (*Id*. at ¶ 33.)

---

[1] Despite its obvious importance to the factual background of this case, plaintiff failed to state, in the factual background section of the mandamus petition, when his marriage to Michelle ended. (*See generally* ECF No. 14 at 4-6.) That fact was only provided in plaintiff's response to the motion to dismiss, where plaintiff asserted simply that, after a "rough patch," Michelle and plaintiff ended their marriage in 2012. (*See* ECF No. 22 at 3.)

On June 14, 2016, CIS issued a notice to appear ("NTA") to plaintiff, notifying him that he was removable under the Immigration and Nationality Act ("the INA"). (ECF No. 15-1.) On June 23, 2016, plaintiff was placed in removal proceedings. (ECF No. 15-2 at 1.) On June 24, 2016, CIS sent plaintiff a letter, notifying him that it was unable to make a decision on his application for naturalization because he had been placed in removal proceedings. The letter stated that, if plaintiff's removal proceedings were terminated by an Immigration Judge, plaintiff could submit a copy of the termination order and a written request to CIS in order to continue adjudication of the application for naturalization. (*Id*.) To date, no decision has been rendered on plaintiff's application for naturalization. (ECF No. 14 at ¶ 34.)

### III.   Discussion

Defendants argue that the mandamus petition should be dismissed for the following reasons: (1) this Court lacks jurisdiction because the case is constitutionally moot; (2) even if the case is not constitutionally moot, plaintiff's claims are not ripe; (3) even if the case is not constitutionally moot, plaintiff's claims are implausible; and (4) to the extent plaintiff challenges CIS' commencement of removal proceedings, this Court lacks subject matter jurisdiction. (*See generally* ECF No. 15.) The Court turns first to the jurisdictional mootness challenge.

#### A.   Jurisdiction and Mootness

Defendants' argument runs as follows. Although an applicant for naturalization may move for a hearing on his application if a decision is not rendered within 120 days of examination, no such application can be considered by the Attorney General if there is pending against the applicant a removal proceeding. (ECF No. 15 at 5-6 (citing 8 U.S.C. § 1447(b) ("§ 1447(b)"), 8 U.S.C. § 1429 ("§ 1429"))). Defendants cite the Tenth Circuit Court of Appeals' unpublished decision in *Awe v.*

*Napolitano*, 494 F. App'x 860, 866 (10th Cir. 2012). (ECF No. 15 at 7.) Given *Awe's* relevance to this case, the Court discusses it below.

As an initial matter, it is necessary to note that *Awe* did not involve the specific issue present here: specifically, whether *§ 1447(b)* is mooted by § 1429. In *Awe*, the Tenth Circuit was presented with whether *§ 1421(c)* was mooted by § 1429. *See Awe*, 494 F. App'x at 865-866. Section 1421(c) gives an alien a right to an independent judicial decision following the denial of an application for naturalization. *See* 8 U.S.C. § 1421(c). That is obviously not at issue here given that plaintiff's application for naturalization has not yet been determined. Nevertheless, the discussion in *Awe* between the interplay of § 1421(c) and § 1429 is still helpful and relevant to the issue presented here.

In that case, a lawful permanent resident, Awe, filed an application for naturalization, and CIS denied the same. *Awe*, 494 F. App'x at 862. Awe filed a petition for review, pursuant to § 1421(c) in a district court, and then, subsequently, was placed in removal proceedings. *Id*. The Tenth Circuit first concluded that § 1429 "does not strip district courts of jurisdiction over petitions regarding naturalization applications." *Id*. at 865. The Tenth Circuit then concluded that, by virtue of § 1429, removal proceedings "effectively bar federal consideration of § 1421(c) petitions". Unlike other circuit courts of appeal, the Tenth Circuit based this conclusion upon the doctrine of constitutional mootness. *Id*. In clear language, the Tenth Circuit stated that "[t]he initiation of removal proceedings against Mr. Awe rendered his § 1421(c) petition moot." *Id*. at 866. The Circuit explained that the initiation of removal proceedings constituted a "change of circumstances," precluding conclusive or specific relief, thus, bringing into play the constitutional mootness doctrine. *Id*. (quotation omitted). The Tenth Circuit also stated that it did not discern the applicability of any

5

recognized exception to the mootness doctrine, as the case did not involve the defendants voluntarily ceasing the offending conduct or conduct that was capable of repetition. *Id*.

The Tenth Circuit further concluded that any request for declaratory relief would be moot. *Id*. More specifically, the Circuit explained that declaratory relief must affect the behavior of the parties. The Circuit concluded that any declaration that Awe met the requirements for naturalization could not affect the behavior of the defendants because § 1429 barred them from acting. *Id*. The Circuit concluded that any declaration that Awe was prima facie eligible for naturalization for purposes of terminating his removal proceeding under 8 C.F.R. § 1239.2(f) ("§ 12392(f)") was also moot because there was no pending naturalization application. *Id*. at 866-867.

Defendants also cite two out-of-circuit cases; both of which involved the interplay of § 1447(b) and § 1429. (*See* ECF No. 15 at 7-8.) In no particular order, in *Saba-Bakare v. Chertoff*, 507 F.3d 337 (2007), the Fifth Circuit Court of Appeals concluded that, even if jurisdiction existed under § 1447(b) to review a naturalization application, invoking such jurisdiction would be "futile." *Id*. at 340. More specifically, the Fifth Circuit explained that § 1447(b) only provides a district court with a means of addressing an administrative delay for a naturalization application that the Attorney General *may* consider. The Fifth Circuit further explained that § 1429 does not allow the Attorney General to consider any naturalization application when a removal proceeding is pending. Thus, under § 1447(b), a district court could determine the matter or remand for CIS to determine the same, but, in either instance, any determination would be controlled by § 1429, and that provision requires an applicant to wait until the termination of removal proceedings. *Id*. The Fifth Circuit also rejected the applicant's contention that jurisdiction existed to issue a declaratory judgment as to his prima facie eligibility for naturalization. *Id*. at 340-341. Specifically, the Fifth Circuit concluded that,

6

because, in 1990, the U.S. Congress removed authority from district courts to naturalize aliens and gave such authority exclusively to the Attorney General, only the Attorney General had authority to declare an alien prima facie eligible for naturalization. *Id*. at 341. As a result, the Fifth Circuit affirmed the district court's dismissal of the case for lack of subject matter jurisdiction. *Id*. at 342.

Next, in *Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008), the Second Circuit Court of Appeals, in assuming that the applicant satisfied § 1447(b)'s jurisdictional requirement, concluded that § 1429 "does not permit an alien to state a claim for [ ] relief under § 1447(b) while removal proceedings are pending against him." *Id*. at 237-238. The Second Circuit further explained that § 1447(b) authorizes a district court to remand a matter "with appropriate instructions," and instructing CIS to admit an alien to citizenship in advance of the completion of removal proceedings could not be an appropriate instruction in light of § 1429. *Id*. at 238-239 (emphasis omitted). The Second Circuit also concluded that a district court itself could not admit an alien to citizenship because, in part, such a court's authority to grant naturalization relief cannot be greater than that of the Attorney General. *Id*. at 239-240. As a result, the Second Circuit affirmed the district court's dismissal of a claim under § 1447(b) for failure to state a claim upon which naturalization relief could be granted. *Id*. at 241. The Second Circuit also identified no error in the district court not holding the claim in abeyance pending the conclusion of removal proceedings because the district court did not foreclose the possibility of refiling if removal proceedings were resolved favorably for the applicant. *Id*.

Understandably, plaintiff relies upon different cases. Again, in no particular order, plaintiff cites *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254 (3d Cir. 2012). (ECF No. 22 at 16-17.) *Gonzalez* is procedurally different to the other cases relied upon by the parties in that the case reached summary judgment, and the district court ruled de novo on the merits of the denial of the

applicant's naturalization application, which itself had been denied on the merits. *See Gonzalez*, 678 F.3d at 255-256. Because the naturalization application was denied, *Gonzalez* also involved the interplay of § 1421(c) and § 1429, rather than § 1447(b). *Id*. at 258.

As pertinent to the issues here, the Third Circuit concluded that § 1429 did not foreclose judicial review under § 1421(c) of the denial of a naturalization application, and district courts may issue a declaratory judgment regarding the lawfulness of such a denial. *Id*. With respect to jurisdiction, the Third Circuit distinguished its case, explaining that, unlike a denial of a naturalization application pursuant to § 1429, the petitioner's application was denied on the merits, and thus, jurisdiction was appropriate. *Id* at 258-259. With respect to declaratory relief, the Third Circuit found it to be appropriate because it "strikes a balance between the petitioner's right to full judicial review as preserved by § 1421(c) and the priority of removal proceedings enshrined in § 1429." *Id*. at 260.

Next, plaintiff cites *Klene v. Napolitano*, 697 F.3d 666 (7th Cir. 2012). (ECF No. 22 at 17-18.) *Klene* again involved the interplay of § 1421(c) and § 1429. *Klene*, 697 F.3d at 667. More important for this Court, the Seventh Circuit Court of Appeals in *Klene* clearly stated its disagreement with the conclusion reached by the Tenth Circuit in *Awe* with respect to constitutional mootness. *Id*. at 668. Thus, as far as the Court is concerned, the persuasive force of *Klene*, at least with respect to the interplay of § 1421(c) and § 1429, is diminished, irrespective of *Awe's* non-precedential status. Nevertheless, in *Klene*, the Seventh Circuit concluded that a district court has jurisdiction under § 1421(c) to review the denial of a naturalization application, irrespective of a pending removal proceeding, and a court may enter a declaratory judgment in an alien's favor, including a judgment that a marriage was bona fide. *Id*. at 668-669. The Seventh Circuit explained

8

that it was possible to allow declaratory relief because the Attorney General had acted on the petitioner's application *before* commencing removal proceedings. *Id*. at 669. The Seventh Circuit further explained that, "[i]f the application for naturalization had been pending when the removal proceedings began, then the Attorney General would not have made a final decision and § 1421(c) would not have allowed Klene to ask the district court for relief." *Id*. at 669.

Plaintiff also cites *Martinez v. Johnson*, 104 F. Supp. 3d 835 (W.D. Tex. 2015). (ECF No. 22 at 17.) In *Martinez*, the court, first, found that § 1447(b) vested exclusive jurisdiction in district courts to adjudicate a naturalization application once a § 1447(b) action is initiated. *Martinez*, 104 F. Supp. 3d at 839. Next, turning to the effect of § 1429 on the petitioner's § 1447(b) action, the district court interpreted the Fifth Circuit's decision in *Saba-Bakare* as not completely divesting courts of jurisdiction over such an action, but, instead, requiring "patience" from an applicant while removal proceedings were pending. *Id*. at 841. Finally, the district court, in considering what remedy was available to the petitioner, found appropriate staying the case until the outcome of the removal proceeding was determined. *Id*. at 843.[2]

Upon this canvas, the Court paints. To begin, it is important to note the difference between an action under § 1421(c) and one under § 1447(b) because this difference is important and, in part, results in where the Court eventually ends up. As the Seventh Circuit explained in *Klene*, an action under § 1421(c) "gives the alien a right to an *independent* ('de novo') judicial decision," with respect to his application for naturalization. *Klene*, 697 F.3d at 669. Section 1447(b) provides no such thing. Instead, upon a proper showing of delay, § 1447(b) allows a petitioner to seek judicial help,

---

[2] Plaintiff also cites *Ampe v. Johnson*, 157 F. Supp. 3d 1 (D.D.C. 2016). (ECF No. 22 at 18.) However, plaintiff fails to explain how that case is relevant to whether § 1429 prevents this Court from hearing his § 1447(b) claim, or to any other relevant issue (*see id*.), and, based upon its own review, the Court can discern how it is relevant. Therefore, the Court does not address it any further.

via a hearing, in removing the delay, with the court either determining the matter or remanding the matter to CIS to determine "with appropriate instructions." *See* 8 U.S.C. § 1447(b). In other words, a petitioner in a § 1447(b) proceeding does not have a *right* to an independent de novo judicial decision. Further, as the Second Circuit explained in *Ajlani*, the instances when a court should determine itself the matter of an applicant's naturalization should be reserved "for those rare circumstances in which CIS *unnecessarily* delays the adjudication of an application." *Ajlani*, 545 F.3d at 240 (emphasis in original, ellipsis and quotation omitted).

This understanding of the difference between § 1421(c) and § 1447(b) proceedings shapes the Court's findings. First, something that may not be undisputed, but should be, this Court has subject matter jurisdiction over plaintiff's § 1447(b) proceeding[3]. The Tenth Circuit reached the same conclusion in *Awe*, and, although that involved a § 1421(c) proceeding, the Circuit's language covers all petitions regarding naturalization applications. *See Awe*, 494 F. App'x at 865 ("§1429 does not strip district courts of jurisdiction over petitions regarding naturalization applications."). In any event, even if *Awe* does not reach so far, independently, the Court finds that § 1429 does not strip jurisdiction from a properly filed § 1447(b) action. The statutory language is clear that this Court has jurisdiction over such an action. 8 U.S.C. § 1447(b) ("Such court has *jurisdiction* over the matter and may determine the matter or remand the matter, with appropriate instructions to [CIS] to determine the matter.") (emphasis added).

---

[3] Although there is no claim alleged in the mandamus petition, in their motion-to-dismiss papers, the parties create an issue over whether this Court has subject matter jurisdiction with respect to the commencement of removal proceedings against plaintiff. (*See* ECF No. 15 at 12-13; ECF No. 22 at 26-27.) To put the parties' minds at rest, apart from not being a pled claim, the Court has no subject matter jurisdiction over any hypothetical claim of this ilk in light of 8 U.S.C. § 1252(g), which strips courts of jurisdiction to hear any claim arising from the decision to commence removal proceedings. Plaintiff's arguments to the contrary simply ignore this clear statutory language.

Second, in light of *Awe*, the Court believes the next necessary step to address is whether plaintiff's § 1447(b) proceeding is constitutionally moot. In other words, whether plaintiff's case is amenable to specific relief or would affect the behavior of defendants. *See Awe*, 494 F. App'x at 866-867. Plaintiff asks the Court for the following substantive relief: ordering CIS to explain why a decision has not been reached on his application for naturalization;[4] ordering CIS to render a decision on plaintiff's application for naturalization; and declaring plaintiff and Michelle's former marriage to have been bona fide.[5] (ECF No. 14 at 13.)

As to ordering CIS to render a decision on plaintiff's application for naturalization, § 1429 clearly prohibits the Court from ordering this relief. To repeat, § 1429 provides that "*no application for naturalization shall be considered* by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act". 8 U.S.C. § 1429 (emphasis added). There is simply nothing more to say with respect to that request for relief.

The request for this Court to declare that plaintiff and Michelle's former marriage was bona fide is a different matter, but the result is ultimately the same. Notably, § 1447(b) does not allow the Court to provide this type of declaratory relief. That provision provides that a court may *either* determine the matter or remand the matter with appropriate instructions. 8 U.S.C. § 1447(b).

---

[4] The Court considers this request for relief to be moot for the simple reason that defendants have provided plaintiff with a reason for why his application for naturalization has not been decided: § 1429 prevents CIS from further considering the application. (*See* ECF No. 15-2.) Therefore, the Court does not further address this request for relief.

[5] Plaintiff also asks this Court to estop defendants from challenging the validity of plaintiff's former marriage. (ECF No. 14 at 13.) However, that request for relief is not premised upon § 1447(b), but on principles of equity. (*See id.* at 11-12). As such, the Court does not address it in this part of its discussion, but addresses it *infra*.

Plaintiff does not ask this Court to determine his naturalization application, and, even if he did, the Court would decline to do so. As the Second Circuit observed in *Ajlani*, there are only narrow circumstances when a district court should undertake to decide a naturalization application itself; specifically, those circumstances where CIS "*unnecessarily* delays" the adjudication of an application. *Ajlani*, 545 F.3d at 240 (emphasis in original, quotation omitted). Like in *Ajlani*, here, the delay, at least the current delay, is due to Congress calling an explicit halt to CIS' ability to further consider plaintiff's application for naturalization. *See id*. Thus, the Court would not find the circumstances here appropriate to determine plaintiff's matter itself.

This leaves remanding the matter with appropriate instructions, which begs the question can the Court declare that plaintiff's former marriage was bona fide as part of the process of remanding and instructing. The Court thinks not. Assuming, hypothetically, that § 1429 was not at play here, if the Court made such a declaration and then remanded plaintiff's matter, effectively, the Court would be determining plaintiff's matter itself rather than remanding to CIS to do so. In other words, based upon the facts before the Court, the only issue that may be left to resolve in plaintiff's naturalization proceeding is whether his former marriage was bona fide. If the Court were to make a declaration as to that issue, there would be nothing left for CIS to determine, thus, obviating the need to remand the matter to CIS in the first place. Thus, to do so, would effectively write out part of the remedial language from § 1447(b). In addition, the Court does not construe the language—"with appropriate instructions"—as allowing the Court to make findings and issue a declaratory judgment with respect to plaintiff's naturalization matter. Those would not be *instructions*, but orders.[6] Finally, as the Second Circuit explained in *Ajlani*, if the Court did remand,

---

[6] It is not necessary to resolve the extent of what "appropriate instructions" a court may give CIS. Whatever that phrase may mean it does not include issuing a declaratory judgment that a marriage is bona

12

the Court could not appropriately instruct CIS to determine plaintiff's matter because § 1429 prohibits CIS from doing so. *See Ajlani*, 545 F.3d at 238-239.

As such, § 1447(b) does not provide the Court with the capacity to issue the declaratory judgment plaintiff seeks. In terms of constitutional mootness, the Court, thus, does not find that plaintiff's § 1447(b) action is amenable to specific relief or will affect the behavior of the parties. Even if the Court could theoretically issue the declaratory judgment plaintiff seeks, the Court would still not find that such a judgment would affect the behavior of the parties. With respect to what affect such a judgment would have on plaintiff's application for naturalization, it would be nil because, as explained, CIS is not currently permitted to make any further determination as to the same under § 1429.

There is one other potential avenue for plaintiff, assuming the Court could issue a declaratory judgment: termination of plaintiff's removal proceeding under § 1239.2(f). That provision, from plaintiff's perspective, has the benefit of removing the road block preventing further consideration of his application for naturalization. *See* 8 C.F.R. § 1239.2(f). In *Awe*, the Tenth Circuit was able to cast aside this provision because there was no pending naturalization application. *Awe*, 494 F. App'x at 866. That is not the situation here. However, the Court still does not believe that § 1239.2(f) would necessarily affect the behavior of the parties, even if the Court could issue the declaratory judgment plaintiff seeks.

---

fide or not. To offer an example of what is appropriate, though, the Court imagines "appropriate instructions" to mean instructing CIS to promptly resolve an application for naturalization. *See Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 810 (E.D. Va. 2007) (citing cases, and remanding to determine a naturalization application within 120 days of the court's opinion); *Shalabi v. Gonzales*, 2006 WL 3032413, at *6 (E.D. Mo. Oct. 23, 2006) (remanding to resolve "as expeditiously as possible").

13

Section 1239.2(f) provides that a removal proceeding may be terminated by an immigration judge "when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors." As such, two things have to happen. An alien must establish prima facie eligibility for naturalization. Here, although the Court believes, based upon the record, that the status of plaintiff's former marriage may be determinative of plaintiff's eligibility for naturalization, that is not necessarily the case. Even if it were, there is still a second step an alien must establish: that his matter involves exceptionally appealing or humanitarian factors. The Court is not asked, nor would it be able, to resolve that issue. An Immigration Judge would be in a far better position that this Court to determine whether appealing or humanitarian factors exist. Thus, even if the Court were to declare plaintiff's former marriage to be bona fide, such a declaration would not necessarily affect the behavior of the parties. *See Awe*, 494 F. App'x at 866 (explaining that a plaintiff must assert a claim that would affect the behavior of the parties).

Accordingly, the Court finds plaintiff's § 1447(b) claims to be constitutionally moot. The Court also finds that no recognized exception to the mootness doctrine applies here. As the Tenth Circuit explained in *Awe*,[7] the two exceptions are (1) when the defendant voluntarily ceases its offending conduct, and (2) when the challenged conduct is capable of repetition yet would evade review. *Awe*, 494 F. App'x at 866. Here, the first scenario is not present because defendants have not voluntarily ceased their offending conduct; plaintiff's application for naturalization is still delayed. The second scenario is also not present. Plaintiff asserts that exception does apply because

---

[7] As such, the Court finds plaintiff's repeated assertions in his response (*see* ECF No. 22 at 15-16), that the Tenth Circuit did not address exceptions to mootness in *Awe,* to be misleading, disingenuous, or both.

he may have to submit another § 1447(b) suit if CIS does not timely decide his application for naturalization in the future. (*See* ECF No. 22 at 20.) That statement may turn out to be accurate, i.e., plaintiff may have to re-file another § 1447(b) suit in the future, but the legal conclusion plaintiff draws from that is not accurate. In other words, should plaintiff's removal proceedings be terminated, and should plaintiff re-file his § 1447(b) petition, then that petition will be reviewed by a district court on the merits because there will be no removal proceeding standing in the way. Thus, the re-filed § 1447(b) suit would not evade review.

As stated, plaintiff cites *Gonzalez* and *Klene*, and argues that the Court should follow their approach. The Court disagrees. Importantly, those cases involve § 1421(c), not § 1447(b).[8] Careful reading of them both reflects that the relief provided in those cases was the direct result of not only § 1421(c), but also the fact that the naturalization applications had been denied on the merits. Notably, both the Third and Seventh Circuits explained that declaratory relief was necessary in order "to strike[] a balance between the petitioner's right to *full judicial review* as preserved by § 1421(c) and the priority of removal proceedings enshrined in § 1429." *Gonzalez*, 678 F.3d at 260 (emphasis added); *see also Klene*, 697 F.3d at 669 ("This approach preserves the alien's entitlement under § 1421(c) to an independent judicial decision while respecting the limit that § 1429 places on the Attorney General's powers."). As already explained, no such full judicial review of a plaintiff's application for naturalization is at issue here; not least because CIS has not rendered a decision, and thus, there is nothing to review. All there could be to do, at best, is to remand the matter with appropriate instructions so that CIS can make a determination. As such, there is no balancing for the Court to do here, creating the need for declaratory relief. For that simple reason, although *Klene*

---

[8] Interestingly, plaintiff finds much fault with *Awe* for being a § 1421(c) case (*see* ECF No. 22 at 15-16), but no such fault with *Klene* and *Gonzales* for being the same type of case.

and *Gonzalez* may make a good case for allowing declaratory relief in the context of a § 1421(c) proceeding involving an application denied on the merits (keeping in mind the contrary position taken in *Awe*), the reasons articulated in those cases for such relief does not apply with anything close to equal force in a § 1447(b) proceeding such as the one here.

On a final note as to the mootness of plaintiff's § 1447(b) action, as explained, plaintiff must show that the action is "amenable to specific relief." *See Awe*, 494 F. App'x at 866. As further explained, this action is not amenable to the specific relief that plaintiff seeks. That is not to say, however, that in no circumstance could a § 1447(b) action not be amenable to specific relief. For example, in one of the other cases plaintiff cites, *Martinez*, the district court stayed a § 1447(b) case, finding that such relief was appropriate under the statute. This Court does not necessarily disagree with such an approach. Nonetheless, ordering a stay may not be that different to dismissing a case without prejudice with leave to re-file should a removal proceeding be terminated in a petitioner's favor, *see Ajlani*, 545 F.3d at 241 (identifying no error in not staying a § 1447(b) claim because the Second Circuit did not understand the district court to have foreclosed the possibility of refiling if removal proceedings were resolved favorably to the petitioner), which is precisely what the Court will be doing in this case.

In sum, the Court finds that plaintiff's claims relying upon § 1447(b) are constitutionally moot, and thus, those claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

## B.    Equitable Estoppel

The Court considers plaintiff's equitable estoppel claim (Claim 4) to be distinct from, although related to, his claims premised upon § 1447(b).[9] In other words, the Court does not find

---

[9] By that, the Court means, although plaintiff brings claims under the APA and the Declaratory Judgment Act, those statutes are not an independent basis for jurisdiction, instead, jurisdiction must be

plaintiff's equitable estoppel claim to be constitutionally moot, not least because defendants do not make any such argument. (*See generally* ECF No. 15.) Thus, the Court will address the merits of the claim.

In the mandamus petition, plaintiff cites *Kowalczyk v. I.N.S.*, 245 F.3d 1143 (10th Cir. 2001), for the parameters of such a claim. (ECF No. 14 at ¶ 64.) In that case, the Tenth Circuit stated that the elements of estoppel against a private party are: "(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury." *Kowalczyk*, 245 F.3d at 1149 (quotation omitted). In addition, when facing the government, a party must show some type of "affirmative misconduct". *Id*. Moreover, in the immigration context, estoppel against the government "has a particularly high bar." *Id*. at 1150. Fundamentally, "[e]quitable estoppel allows one party to prevent another from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage." *Id*. at 1149.

Here, plaintiff has not alleged a plausible claim that reaches the "particularly high bar" for estoppel against the government in the immigration context. Plaintiff focuses his estoppel claim on

---

established under some other basis, such as § 1447(b). *See Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (the Declaratory Judgment Act); *Hamilton v. Gonzales*, 485 F.3d 564, 568-569 (10th Cir. 2007) (the APA). With respect to the Mandamus Act, to the extent it provides an independent source of jurisdiction, to establish jurisdiction thereunder, plaintiff must show that defendants owe a duty to perform an act that is "ministerial, clearly defined and peremptory." *See Rios v. Zagler*, 398 F.3d 1202, 1206-07 (10th Cir. 2005). Here, although § 1447(b) may allow an applicant to petition a court when a decision on his application for naturalization has not been made within 120 days, § 1447(b) does not *require* that CIS render a decision within 120 days. Moreover, any such a decision is not ministerial, and, as this case shows, rendering a decision is circumscribed by § 1429.

an alleged inconsistent position defendants have taken: whether plaintiff's former marriage was bona fide. (ECF No. 14 at ¶¶ 68-70.) Plaintiff asserts that defendants intend to "relitigate" this issue, which allegedly was decided when plaintiff successfully applied for a visa. (*Id*. at ¶¶ 66, 69-70.) There are a host of problems with these allegations, as well as allegations plaintiff does not make.

With respect to the former, the status of plaintiff's former marriage has never been *litigated*; it was adjudicated as bona fide by CIS with respect to plaintiff' visa application, but that is it. And, as plaintiff alleges, that adjudication was based upon evidence plaintiff and Michelle provided *at the time*. (*See id*. at ¶ 68.) Apparently, plaintiff wishes CIS to be stuck in an evidentiary vacuum dating back to plaintiff's visa application, but plaintiff provides no explanation in law or reason why this should be the case, especially given that, as plaintiff alleges, facts have changed since his visa was approved—namely, plaintiff and Michelle are no longer married. (*See id*. at ¶ 32.) Their separation may or may not be entirely innocuous, but that is for CIS to investigate, not ignore. Therefore, the Court does not find that defendants have taken an inconsistent legal position by investigating plaintiff's former marriage for purposes of his application for naturalization.

With respect to missing allegations, there are no facts alleged in the mandamus petition with respect to any of the actual elements of an estoppel claim. Plaintiff does not allege what facts defendants knew.[10] *See Kowalczyk*, 245 F.3d at 1149. Plaintiff does not allege that defendants intended their conduct to be acted upon.[11] *See id*. Plaintiff does not allege what facts he was

---

[10] In light of the Court's discussion *supra*, defendants could hardly be said to have known of the end of plaintiff's marriage when plaintiff's visa application was approved *before* that event.

[11] Although defendants may have intended plaintiff to act upon the approval of his visa application, by becoming a legal permanent resident, it can hardly be said that defendants intended plaintiff to act upon anything related to his application for naturalization, given that the naturalization application was filed after plaintiff's visa was approved.

ignorant.[12] *See id*. Plaintiff does not allege what conduct he relied upon to his injury.[13] *See id*. And, plaintiff also fails to plausibly allege any affirmative misconduct on defendants' part. *See id*. In his response to the motion to dismiss, plaintiff attempts to paint a picture of misconduct (*see* ECF No. 22 at 25), but all that plaintiff alleges in the mandamus petition is that defendants contacted Michelle in May 2016 about her relationship with plaintiff, and then contacted her again one month later (*see* ECF No. 14 at ¶ 32-33). Contrary to the speculation plaintiff engages (*see* ECF No. 22 at 25), it is simply not plausible that defendants are investigating plaintiff's former marriage for any reason other than as part of their responsibilities related to plaintiff's application for naturalization, rather than to somehow punish plaintiff for filing the mandamus petition.

As a result, the Court finds that plaintiff has not alleged a plausible claim of equitable estoppel against defendants. Thus, that claim is DISMISSED WITHOUT PREJUDICE for failure to state a claim. For the same reasons, plaintiff's motion for a preliminary injunction (ECF No. 9), which seeks to enjoin defendants from investigating the validity of plaintiff's former marriage, is DENIED.[14]

## IV. Conclusion

For the reasons discussed herein, the Court GRANTS the motion to dismiss (ECF No. 15) as follows:

---

[12] Plaintiff may have been ignorant that his marriage would end or that the ending of his marriage might jeopardize his application for naturalization, but so were defendants.

[13] For example, plaintiff fails to allege how he was injured by his visa being approved or his marriage being adjudicated bona fide for purposes of the visa.

[14] The Court adds that the motion for preliminary injunction, which is nominally premised upon a theory of res judicata, shows no chance of success on the merits, given that res judicata requires a final judgment on the merits in an earlier action, and there is no allegation in the mandamus petition of a final *judgment* being entered, or even that the parties participated, in an earlier action.

19

1. Plaintiff's claims under § 1447(b) and the Mandamus Act are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. To the extent plaintiff's removal proceedings are terminated in his favor, this Opinion should not be construed as preventing plaintiff from re-filing his claims under § 1447(b); and

2. Plaintiff's equitable estoppel claim is DISMISSED WITHOUT PREJUDICE for failure to state a claim.

Plaintiff's motion for a preliminary injunction (ECF No. 9) is DENIED.

The Clerk is instructed to CLOSE this case.

**SO ORDERED.**

DATED this 27th day of March, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge